UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH A. BETTY,

       Plaintiff,                    CIVIL ACTION NO. 15-cv-10734

       v.                            DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Deborah A. Betty seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 16). Plaintiff has also filed a response to Defendant's Motion. (Docket no. 17.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.        **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be DENIED and Defendant's Motion for Summary Judgment (docket no. 16) be GRANTED.

## II.    PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of July 6, 2012, alleging that she has been disabled since September 1, 2010, due to diabetes, high blood pressure, depression, sleep apnea, and arthritis in her right hand.  (TR 109-16, 140-41, 145.)   The Social Security Administration denied Plaintiff's claims on October 5, 2012, and Plaintiff requested a *de novo* hearing.  (TR 47-62, 73-74.)  On November 14, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Henry Perez, Jr.  (TR 26-46.)  In a December 23, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she did not have a severe impairment or combination of impairments.  (TR 12-21.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 13 at 6-9), Defendant (docket no. 16 at 4-7), and the ALJ (TR 16-21) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony.  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, the undersigned will incorporate the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

**IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2010, and that Plaintiff had the following medically determinable impairments: depression, diabetes mellitus, arthritis of the right hand, obstructive sleep apnea, and hypertension.  (TR 14-15.)  Nevertheless, the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for twelve consecutive months, and, therefore, she did not have a severe impairment or combination of impairments. (TR 15-21.)  Consequently, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from September 1, 2010, through the date of the decision.  (TR 12, 21.)

**V.     LAW AND ANALYSIS**

   **A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding

4

"supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because "(1) the ALJ made an improper Step 2 Determination and erred in finding Plaintiff's multiple impairments are non-severe impairments; (2) the ALJ failed to give proper deference to the opinion of Plaintiff's treating physician; (3) the ALJ made a flawed credibility finding; (4) the ALJ erred in not considering the effect of Plaintiff's impairment on her ability to work; and

5

(5) the ALJ failed to establish that there is other work in the national economy that Plaintiff can perform." (Docket no. 13 at 10.)

### 1. The ALJ's Step-Two Determination

First, Plaintiff asserts that the ALJ made an improper determination at Step Two of the sequential evaluation process by finding that Plaintiff's impairments were non-severe. (Docket no. 13 at 11-14.) At Step Two of the sequential evaluation process, Plaintiff was required to show that she suffered from a severe impairment. A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities, defined as the physical or mental abilities and aptitudes necessary to perform most jobs, includes the ability to walk; stand; sit; lift; push; pull; reach; carry; handle; see; hear; speak; understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521, 416.921.

The Sixth Circuit court has determined that the step-two requirement serves as a "de minimus" threshold hurdle in the disability process. *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988). The inquiry at step two functions as an "administrative convenience to screen out claims that are totally groundless" from a medical perspective. *Id.* at 863 (citation omitted). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). "Under this standard, the

question . . . is whether there is substantial evidence in the record supporting the ALJ's finding that [the plaintiff] has only a 'slight' impairment that does not affect her ability to work." *Id.*

In making his Step-Two determination, the ALJ recognized that Plaintiff has the medically determinable impairments of depression, diabetes mellitus, arthritis of the right hand, obstructive sleep apnea, and hypertension. (TR 15.) Then, after considering Plaintiff's medical record, written statements, and hearing testimony, the ALJ found that Plaintiff's medically determinable impairments were not severe on the grounds that Plaintiff's statements regarding her symptoms were not entirely credible and the objective medical evidence did not reveal work-related limitations. (TR 16-21.) With regard to Plaintiff's physical impairments, the ALJ explained:

> Claimant's physical impairments are [] found to be nonsevere based on the fact that they do not cause more than minimal limitation in functioning related to work activity for at least 12 months. Claimant has OSA and a CPAP had been described, but that diagnosis has also been described as only "mild", having approximately 90% efficiency on most sleep studies. She also reports great fatigue and very little sleep, but her reports range from 1 hour of sleep per night to over 6 hours on her actual sleep studies. Moreover, her admitted activities during the day . . . are not consistent with someone who is exhausted and napping much of the day. Her hypertension also does not seem to be symptomatic, and her diabetes has not caused any significant problems other than rare occasions of high glucose. Her notes indicate that she is compliant with medication and that those conditions are stable. Lastly, regarding her arthritis, there is no actual x-ray or other exam in evidence to confirm such a diagnosis and no significant limitations in functioning from that disorder are indicated by the objective medical evidence of record. Specifically on one exam of her arm she was noted to have "some" decreased sensation in the ulnar and median nerve distribution of the right hand, however as she was also found to have full grip strength and no other functional limitations from that finding, her arm pain/osteoarthritis is also found to be nonsevere.

(TR 20.) With regard to Plaintiff's depression, the ALJ evaluated it under section 12.00C of the Listing of Impairments and found that it only mildly affected Plaintiff's activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. (TR 20-21.) The

7

ALJ also evaluated the opinions of Plaintiff's treating psychiatrist, who opined that Plaintiff's depression resulted in marked limitations and a low GAF score, and accorded them little weight. (TR 18-20.)

Plaintiff challenges the ALJ's findings with respect to her sleep apnea and depression. Plaintiff's arguments in this respect are inextricably intertwined with her arguments regarding the ALJ's assessment of her treating psychiatrist's opinions and the ALJ's credibility finding, which will be addressed in turn.

### a. The ALJ's Assessment of Dr. Dosyng Yoon, M.D.'s Opinion

Plaintiff argues that the ALJ improperly rejected Dr. Yoon's opinions that Plaintiff cannot work due to depression. (Docket no. 13 at 14-16.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite

8

factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Here, the ALJ noted that Plaintiff began treating with Dr. Yoon in July 2012 and that Plaintiff treated with him about every two months through August 2013. (TR 18.) The ALJ then addressed Dr. Yoon's treatment notes, diagnosis, and the GAF score he assigned to Plaintiff. He

9

began with a discussion of Dr. Yoon's initial July 2012 psychiatric evaluation of Plaintiff. (TR 18 (citing TR 249-52).) In doing so, the ALJ recited Plaintiff's subjective complaints and the results of Dr. Yoon's ensuing mental status exam, in which Dr. Yoon found that Plaintiff presented with average grooming/hygiene, cooperative attitude/behavior, anxious and depressed mood, auditory hallucinations, adequate impulse control, and adequate judgment. (TR 18 (citing TR 249-51).) Additionally, the ALJ noted that Dr. Yoon also found Plaintiff's affect, psychomotor activity, speech, thought process, and attention/concentration to be within normal limits. (TR 18 (citing TR 250-51).) The ALJ further noted that Dr. Yoon diagnosed Plaintiff with major depressive disorder, single, severe with psychosis and assigned her a GAF score of 45.[1] (TR 18 (citing TR 252).) The ALJ then discussed the results of Plaintiff's subsequent mental status exams performed by Dr. Yoon in August and October 2012 and noted that they were substantially similar to the one in July – essentially normal with the exceptions of depressed mood and auditory hallucinations; the ALJ also pointed out that the results of Plaintiff's December 2012 mental status exam were completely normal. (TR 18-19 (citing TR 255-56, 329-30, 340).) The ALJ further pointed out that Dr. Yoon continued to assess Plaintiff's GAF score at 45 through January 2013. (TR 19 (citing 322).)

The ALJ then acknowledged that Plaintiff may suffer from depression as a non-severe impairment, but he found that the low GAF score assessed by Dr. Yoon was inconsistent with his treatment notes, and he assigned Dr. Yoon's opinion little weight. (TR 18, 19.) Specifically, the ALJ reasoned that while Plaintiff reported hallucinations and presented to Dr. Yoon with depressed mood, Dr. Yoon's assessment of Plaintiff's GAF score did not account for Plaintiff's

---

[1] A GAF score is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (Text Revision 4th ed. 2000) ("DSM-IV"). A GAF rating of 41 to 50 signals the existence of serious symptoms or a serious impairment in social, occupational, or school functioning. *Id*.

10

higher degree of functioning with regard to her judgment, impulse control, attention/concentration, grooming/hygiene, thought process, attitude/behavior, speech, psychomotor activity, affect, and orientation, as supported by the results of her mental status exams. (TR 18, 19.) The ALJ also asserted that Plaintiff's December 2012 "wholly unremarkable mental status exam" could not support a GAF score of 45. (TR 19.) The ALJ further reasoned that other than the mental status exams, Dr. Yoon's treatment notes were nonspecific and lacked the detail necessary to support his opinion regarding the severity of Plaintiff's mental functioning. (TR 19.) Lastly, the ALJ reasoned that Dr. Yoon's assessment of Plaintiff's GAF score was inconsistent with Plaintiff's reported daily activities and abilities to live alone, work part-time, attend church, shop, do chores, and prepare meals. (TR 19.)

Next, the ALJ considered and discussed the Medical Questionnaire form and the Medical Assessment of Ability to do Work Related Activities (Mental) form, both completed by Dr. Yoon on October 23, 2012:

> In addition, Dr. Yoon prepared two statements on October 23, 2012 indicating that Claimant had major depressive disorder with very low mood, helplessness, insomnia, and hallucination (Id. at 2). It was noted that she was fatigued and lacked concentration due to racing thoughts (Id.) It was also noted that she had side effects from her medication such as insomnia, shakiness, nausea, and agitation (Id. at 3). Dr. Yoon found that her age and unemployment status in a city with very high unemployment exacerbated her major depressive disorder (Id.). Those opinions are given little weight as they are not consistent with the mental exams and reports of Claimant noted above that do not indicate any side effects of medication, shakiness, nausea, or agitation, nor any frequent, repeated, or lasting indication of any lapse in concentration. Moreover, his other statements, such as those regarding hallucination and insomnia, are based on Claimant's subjective statements and are not supported upon exam. Racing thoughts and shakiness are also not indicated by her exams, as they instead indicate normal thought process and normal psychomotor activity. For these same reasons, Dr. Yoon's other statement of opinions, which indicates a GAF of 45 and has several marked limitations in understanding and memory and social interaction are given little weight (Exhibit 9F). Notably, in that statement Dr. Yoon notes that Claimant does not do much, does not like being around others, is tired during the day with little energy, and stays at home[, which] is inconsistent

11

>with his other statement that she has a friend that she talks to, and other statements noted above as admitted by Claimant or listed in her treating notes that indicate she does go out to shop, church, therapy, work, and is able to do some chores, handle personal care, cook, handle money, and do other activities that are not consistent with these opinions and so low of a GAF score.

(TR 19-20 (citing 268-73).)

In her brief, Plaintiff argues that (1) the ALJ's reasons for rejecting Dr. Yoon's opinions as inconsistent with his exams and reports are erroneous; (2) the ALJ failed to articulate good reasons for rejecting the GAF score assessed by Dr. Yoon; (3) the ALJ misinterpreted the GAF score because he did not consider it in conjunction with the other evidence of record; (4) the ALJ cherry-picked the treatment notes; and (5) the ALJ's conclusion that Dr. Yoon's opinion be disregarded is ambiguous because the ALJ does not identify the record evidence that is inconsistent with Dr. Yoon's opinion. (Docket no. 13 at 14-16.) In her response brief, Plaintiff asserts that (1) the ALJ completely rejected the ALJ's opinion; (2) the ALJ failed to find obvious inconsistencies between Dr. Yoon's opinion and the medical record; and (3) the ALJ failed to specify what lesser weight should be given to Dr. Yoon's opinion after consideration of the regulatory factors. (Docket no. 17 at 3-4.) Plaintiff also suggests that the ALJ was not entitled to consider and rely upon the results of Plaintiff's mental status exams because Dr. Yoon recorded the results through the use of check boxes. (*Id.* at 4.) Interestingly, though, Plaintiff argues that the ALJ should have credited and relied upon Dr. Yoon's October 23, 2012 opinion, in which Dr. Yoon uses check boxes to assess Plaintiff with marked limitations in several functional categories. (*See* TR 272-73.)

Plaintiff's arguments are conclusory and undeveloped. Plaintiff does not explain why the ALJ's reasons are erroneous or describe what treatment notes the ALJ failed to consider. Moreover, many of Plaintiff's arguments are incorrect and are directly invalidated by the ALJ's

12

decision, discussed above. For instance, the ALJ did not completely reject Dr. Yoon's opinions or fail to specify the weight he assigned to them. The ALJ explicitly assigned little weight to Dr. Yoon's opinions, and in doing so, he considered the length of Plaintiff's treatment relationship with Dr. Yoon, the frequency of examination, the consistency of Dr. Yoon's opinions with the record, and the supportability of his opinions. Moreover, the ALJ supported his lengthy, well-reasoned assessment of Dr. Yoon's opinions by citing numerous specific examples of their inconsistency with Dr. Yoon's own treatment notes and Plaintiff's reported symptoms and daily activities. The ALJ did provide good reasons for discounting Dr. Yoon's opinion; his assessment of Dr. Yoon's opinion is supported by substantial evidence and should not be disturbed.

### b. The ALJ's Assessment of Plaintiff's Credibility

Next, Plaintiff asserts that the ALJ erred by failing to explain why he found Plaintiff to be not entirely credible. (Docket no. 13 at 16-17.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of

13

an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered Plaintiff's hearing testimony and written statements and found them to be not entirely credible. (TR 16.) In support of this determination, the ALJ reasoned that Plaintiff's part-time work as a bus monitor was inconsistent with her reports of being isolative and having auditory hallucinations. (TR 16.) The ALJ acknowledged Plaintiff's testimony that her right hand locks up, but he noted that Plaintiff had not undergone any related testing. (TR 16.) Similarly, the ALJ acknowledged Plaintiff's September 2010 complaints of vision issues, but he noted that the results of the ensuing vision exam were negative for any vision defects or eye disease. (TR 16.)

14

The ALJ also discussed Plaintiff's complaints with regard to her sleep apnea and explicitly found them to be incredible. The ALJ reasoned that Plaintiff's statements about sleeping only one hour per night were inconsistent with the results of her sleep studies and her reports to Dr. Ali K. Najar, M.D., a physician at the St. Joseph Mercy Sleep Disorders Center. (TR 18 (citing TR 217-39).) The ALJ also reasoned that Plaintiff's "Epworth Sleepiness Scale was 4 out of 24, which did not imply daytime sleepiness, and is damaging to [Plaintiff's] credibility, particularly in light of treating records from July, 2013, . . . which indicate that she denied fatigue." (TR 17 (citing TR 233 and 346).) Moreover, the ALJ acknowledged Plaintiff's reports of great fatigue and very little sleep, but noted that that her reports range from one hour of sleep per night to over six hours of sleep during her sleep studies. (TR 20.) The ALJ further reasoned that Plaintiff's admitted daily activities were inconsistent with someone who was exhausted and napping most of the day. (TR 20.)

The ALJ discussed Plaintiff's daily activities as follows:

Specifically, while Claimant has reported being fatigued with poor sleep and napping during the day, she lives alone (See Exhibit 11F, p. 7) and is able to do some chores, work part-time, and go out three times per week, including going to church and to therapy. She also alleges poor concentration, although the vast majority of her exams reveal intact concentration/attention, and she also reports that she can handle money, prepare meals, shop, and watch television and sit through church services. She alleges that she does not like to wash her hair or bathe, but her treating notes indicate good grooming and hygiene. She reported being isolative, but goes to therapy, work, church, and the store, going out about three times per week. The foregoing all support a nonsevere mental impairment.

(TR 19.) Additionally, the ALJ noted that Plaintiff's statements regarding her sleep quality, crying, napping, and other symptoms were inconsistent throughout the record. (TR 19.) Finally, the ALJ reasoned that Dr. Yoon's treatment notes, which reflected essentially normal mental

15

status examinations on most occasions, were not fully supportive of Plaintiff's allegations. (TR 19.)

In her response to Defendant's Motion, Plaintiff argues that the ALJ cherry-picked the evidence that he relied upon in his credibility determination, particularly with regard to Plaintiff's activities of daily living. Plaintiff then cites her function report, in which she stated that she was too afraid to go out alone, that she couldn't sweep due to pain in her right arm, and that she didn't drive because she was on too much medicine. (Docket no. 17 at 2 (citing TR 185).) But the ALJ did explicitly consider those particular statements in his decision, when he discussed Plaintiff's function report. (TR 16.) Plaintiff also alleges that the ALJ omitted from his analysis, and thus mischaracterized, a portion of Plaintiff's statement regarding how often she goes outside. (Docket no. 17 at 2.) The full statement reads, "3 days out of the week depends on how I feel." (TR 185.) The ALJ noted that Plaintiff went out "about three times per week." (TR 19.) The difference between these two statements is a matter of semantics, which the Court declines to address.

The immediate discussion demonstrates that the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and written statements in his decision, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Moreover, the ALJ supported his finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and citing to several examples of inconsistency between Plaintiff's complaints and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence.

As discussed *supra*, the ALJ's assignment of little weight to Dr. Yoon's opinions regarding the severity of Plaintiff's depression is supported by substantial evidence. Furthermore, the ALJ's finding that Plaintiff's subjective complaints, including her statements regarding the severity of her sleep apnea, were not entirely credible is also supported by substantial evidence. Accordingly, the ALJ did not err in concluding that Plaintiff failed to demonstrate that her depression, sleep apnea, or other physical impairments interfered with her ability to perform basic work activities. The ALJ's Step-Two determination that Plaintiff's medically determinable impairments were not severe is supported by substantial evidence, and Plaintiff's Motion should be denied.

### 2. *Plaintiff's Other Arguments*

Plaintiff also argues that the ALJ erred by not considering the effect of Plaintiff's impairments when he developed Plaintiff's RFC and the hypothetical questions to the VE, and by failing to establish that there is other work in the national economy that Plaintiff can perform. (Docket no. 13 at 17-19.) The alleged errors committed by the ALJ, however, relate to the requirements of the sequential evaluation process beyond Step Two. Here, the ALJ found Plaintiff not disabled at Step Two, and where an ALJ finds that a plaintiff is not disabled at a step of the evaluation process, he need not proceed beyond that step. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520(a)). Accordingly, Plaintiff's RFC and Step-Five arguments fail.

## VI. CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 13) and GRANT Defendant's Motion for Summary Judgment (docket no. 16).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 17, 2016          s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 17, 2016          s/ Lisa C. Bartlett
                                  Case Manager